The next case today is Felix Moreno v. Merrick B. Garland, Appeal No. 21-1237. Attorney Olin, please introduce yourself for the record and proceed with your argument. Good morning, Your Honors. Randy Olin on behalf of Petitioner Felix Moreno. And Counsel Olin, if I could ask you at the outset, why is this case not moot? Your client is now back in Cape Verde. He's been removed from the United States. His visa expired. So why is this not moot? Because, Your Honor, if he wins this case, he'll be brought back. Okay. May I reserve one minute for rebuttal, please? You may. Thank you. I'd like to address the board's denial of the motion to remand and reopen. With respect to the jurisdictional question, there's currently a split in the circuits as to whether on the motion to reopen, where a discretionary decision has already been made, whether or not the court has jurisdiction. I don't think we need to reach that in this case because 1252A2D always provides jurisdiction for errors of law and constitutional claims. And in this case, the wholesale failure to consider evidence, ignoring and not addressing new evidence presented on a motion to reopen, a bold statement that the evidence is insufficient, and a summary or conclusory statement that's devoid of any reasoning is an error of law. Counsel, if you would, please. It's very brief, for sure, what the BIA said. But why isn't that another discretionary determination by the board? I mean, they look at this fully stated decision by the IJ, which focuses very much on the criminal record of your client. This new information has nothing to do with his criminal history. Tragically, it adds to the terrible medical issues that his wife has. And so the board says, we conclude this is not going to make any difference. That strikes me as a discretionary call. I mean, I understand if the decision that was made in response to the motion to reopen was legal in nature, constitutional in nature. Sure, we could look at that. But this just strikes me as another discretionary call subject to the same jurisdictional problems. So why isn't that the right way to look at it? Because, Your Honor, even a discretionary call that is infected by legal error in the way that I've just mentioned would give this court jurisdiction to review it. Please elaborate. Where is the legal? What transforms this from a straightforward discretionary call to one that is infected by legal error? That's what I'm struggling to understand. In order to reach the discretionary decision, Your Honor, as these principles of law that I just mentioned at the beginning, they have to be satisfied. The court just can't pronounce a one-sentence ipsy dixit devoid of any analysis of reasoning and have it passed muster from a legal standpoint. I think the case was very, very clear. I think that's, frankly, proven before that the court can't make a decision that's right because of legal error. It's brief, but they say this evidence, if not shown, this evidence would likely change the result of this case, especially in light of the seriousness of this criminal history and dangerous behavior. That is an explanation of why they think it would make no difference. An absolutely deficient explanation at that. Let me, if I may, tell you what a proper determination would have been. If you recall, Your Honor, in the direct appeal, I did not represent him below, but Mr. Moreno presented all sorts of evidence about his, Ms. LaFlores, his partner's myriad serious health conditions at that time. And the testimony and the evidence makes it clear that through Herculean effort on her part, she supported her children financially. She worked and supported her children. She cared for her children. All three of her children have very serious medical and mental health issues. Now, and that was before the diagnosis of astrocytoma. Now, when she gets the diagnosis of brain cancer and has to have brain surgery, radiation, chemotherapy, she can no longer work. So who's going to support the family? She can no longer care for her infirm children. So what's going to happen to them? Counselor, let me ask, but it is a sad situation that she has that brain tumor. But even before that, her condition, she couldn't help. She was basically, you know, she couldn't handle any more of the things. And that was argued before the brain cancer issue came up. But she did, Your Honor. That's actually not the case. She did have these myriad health issues of a very serious nature. But she worked. She took care of her children. She did all that. Mr. Moreno was detained for a couple of years. And she did all that before the astrocytoma. What the board should have considered if it was going to do a real, a reasoned analysis is say, well, she can't work anymore. How will that affect these things? We don't know because the board didn't approach the issue. Well, she can't care for her children. Who is going to take care of her children now? The board didn't consider that. Or at least they didn't say so, which is their responsibility. Excuse me. How is this family going to survive? Why didn't the board just... Just so I understand the legal error here. The legal error is that the new evidence was not simply evidence of a health diagnosis, but evidence of consequences that would follow from the health diagnosis. And there's no evidence that the board considered those in making its discretionary judgment. Your Honor, how this new evidence affects the cases and its consequences... I guess I'm trying to get an answer to my question. I'm getting there, but go ahead. I'm sorry, maybe I misunderstood. Well, it's indisputable from the text of the BIA's decision that it considered the evidence of the change in the health of the partner of the petitioner. I disagree. And the government's response to this, they said, well, you have to look at this in the context of the board's entire decision on the direct appeal. But that is not correct, Your Honor. Because what the board considered on the direct appeal was evidence that was presented to the immigration court before the astrocytoma. After the astrocytoma, we have no indication whatsoever that the board, other than its self-serving Ipsy Dixit... We have no indication that the board... Wait, wait, wait, wait. You're jumping ahead, you're anticipating what I'm asking you, I think. That's not going to get us very far. In denying the motion to reopen, the board was presented with this evidence of the new disease, correct? Yes, it was. Okay, in the Ipsy Dixit that you find insufficient, the board makes clear that it acknowledged the new disease. Isn't that true? It acknowledged the receipt of the new evidence, yes. Yes. Okay, and that new evidence included the disease. The existence of the disease. Okay, so are you disputing that the board acknowledged the existence of the disease? No, but that's all they gave you. Okay, okay, so don't point... They paid lip service to... Just hold on. Go ahead. Just hold on. I take your argument to be that in addition to making the argument about the existence of the disease, the motion to reopen gave evidence about what would follow for the family in consequence of that disease. Namely, she couldn't work. There would be no support for the children, etc., correct? I would imagine so, Your Honor. I don't know if that was stated to the board off the top of my head or if it was implicit in the argument, but certainly it's obvious. It's obvious that the... Well, I guess I'm just trying to figure out where the legal error is. If there is evidence presented to the board, the board says, yes, we considered that evidence, and yet it doesn't change our view. I'm not sure the board considered that evidence, Judge. We have no indication that the board even viewed this evidence, let alone did so carefully. Doesn't it say that it received it and that it's rejecting the contention? Yes, but it reached that conclusion in the complete absence of any reasoning, any analysis. All it did was say, yes, we received this, but let me ask you this. You tell me that in the... One clear error is if they don't acknowledge evidence. I get that. We have cases saying that. That's clearly a legal error. You seem to be making an argument that there is a level of explanation requirement even when you acknowledge you've received the evidence and even when you then state that evidence is insufficient. Absolutely. What case are you pointing to that suggests that applies and that that is legal error? Maybe it's a claim of legal error, but what is the authority that suggests that, in fact, is a legal error? The principles I quoted at the beginning of the argument are within my brief. One is in the Zometa case. One is in the 10th Circuit case that I can't pronounce. Are those motion to reopen cases? Yes, they are. Yes, they are. And what they said is you just can't say, yes, I received this evidence, and it's not going to change our opinion without any analysis or reason whatsoever. The board needed to ask, what's going to happen to this family? Who's going to support them? What's going to happen to the kids who can't take care of themselves? Do I still have time? I'm sorry. I assume you have a few minutes. Dan, how much time is left? Another minute or two? Actually, just a minute or two. Go ahead. Let me just respond to the government's argument because the government says you have to view this in the context of the whole decision. The reasoning that the board gave with respect to the direct appeal dealt only with the evidence that was provided to the Immigration Court. The new evidence obviously couldn't have been provided to the Immigration Court, and that was presented to the board. There was no indication that they contemplated that with any seriousness at all. And we need more than that. We need some analysis. We need some reasoning. Those citations that I quoted, they stand for that proposition. The board just can't make a conclusory statement without any reasoning behind it. It's a legal error by jurisdiction and supports a remand in this case. Thank you. Thank you. Attorney Olin, if you can mute your audio and video at this time, and Attorney Lesno, if you can please introduce yourself on the record to begin. Good morning. Jessica Lesno on behalf of the Attorney General. I would like to address opposing counsel's contentions that the board aired. As your Honor pointed out, it's indisputable that the board considered this evidence, and it made that clear when it stated that they acknowledged that Mr. Moreno's partner had been diagnosed with low-grade astrocytoma. And they acknowledged his assertions that she would be unable to work, that they acknowledged the seriousness of the evidence that was presented. The board was not required, as we commonly call it, to write an exegesis on this contention. Excuse me, counsel. Where does the board acknowledge that in light of this new diagnosis, she will be unable to work? Opposing counsel said that the record before the IJ established that despite her many medical issues, she was still able to do some work to help support her family. I think what he's saying now is in light of this new diagnosis, she'll be unable to work at all. And that may well change the equities. And in order to consider this new diagnosis and its consequences, this should go back for the IJ to reweigh the equities and see how this new evidence with its now more serious consequences, how that plays into the balance of the equities. There's no mention here that they understand the consequences of the new diagnosis. I think, your honor, that the board, so in the second to last paragraph of its decision where it initiated its discussion of the contraband, in the second sentence, the board says, he asserts that this previously unavailable evidence of his partner's health condition and inability to work constitutes an outstanding countervailing equity resulting in a favorable exercise of discretion. Also, with the motion to remand, he submitted a declaration for the partner in which she stated, I would not be able to work. The fact that the board acknowledged the submission of evidence here and then went on to say, we do not think that this evidence would change the result in this case. That is, the underlying discretionary analysis reiterates that the board had viewed the evidence and assessed the calculus of how this would play into the discretionary weighing and determined that it would not change the outcome. Did I completely answer your question? Counsel, let me ask you, there is an issue that opposing counsel brings up. And if you look to the petitioner's convictions, they're all involving automobile issues. These are not drug issues or firearm issues. But one of the findings that the IJ makes is that there's a future possibility of recidivism of these types of offenses. Isn't that a legal error? Because this is not a violation of immigration law or crime of moral turpitude or something of that sort. Isn't this an error? You're right, Your Honor, that there is no criminal ground of removability in this case. But what the judge was doing was looking at all of the aspects of the case in its exercise of discretion, which is the statutory requirement to show that one merits discretion for release of adjustment of status. Now, the particular language that petitioner denounces cite is actually not from the immigration judge's decision at all. It's from the hearing transcript. And in the hearing transcript, the judge does say operating under the influence is not a removable offense. But the judge goes on to say that part of the discretionary analysis is whether Mr. Marino presents a risk to the community. And so, again, this statement was not in the immigration judge's decision. But it reflects that the immigration judge was thinking properly so about in its discretionary weighing whether Mr. Marino posed a risk to the community. And that is not legal error. That's within the proper purview of its discretionary analysis. And something that... Stan, you seem to make the argument that if we were to decide that there was no, in the underlying decision with respect to the adjustment of status, that if that underlying decision, if, let me put it this way, a petitioner failed to convince us that there was some legal error in that decision, that it was, in fact, a pure discretionary determination, which would not be subject to our review, that it follows from that decision that any motion to reopen directed at that discretionary decision is unreviewable by us because that original decision was simply discretionary. That's not correct, is it? I mean, don't we have to look at the grounds for the denial of the motion to reopen to determine whether that decision was a discretionary decision not infected by some legal or constitutional error? We retain our jurisdiction to determine whether we have jurisdiction in that sense if a motion to reopen. Isn't that true? I agree, Your Honor, that the court, of course, has jurisdiction to determine its own jurisdiction. Four minutes remaining. But you did make the broader argument, did you not, in your brief, that if we decide that we should dismiss the petition because the original determination was a purely discretionary one, it follows from that that we have no basis for our reviewing this decision to reopen. You did make that argument, did you not? I did, Your Honor, that the motion to reopen here is likewise unreviewable. And that's because the underlying decision is a discretionary determination that's a judgment, as it were, under the review bar, which is under 1252A2Bi. This discretionary determination constitutes any judgment in the Attorney General's discretion. Now, I'm not saying that there are never circumstances where the court could have jurisdiction to review a motion to reopen. I'm saying that those special circumstances do not exist in this case. And that's what this court contemplated in Mataruk, which is the case that we cited. In Mataruk, after the court announced the rule that the court would lack jurisdiction in the denial of a motion to reconsider, it went on to add a footnote where it acknowledged that there were some cases in other circuits where special circumstances might exist, as contemplated by Fernandez, by the Seventh Circuit's decision in Calma, by the Fourth Circuit's decision in Ovila, where there could be situations where the court might have jurisdiction to review. The key distinction there is whether there was an underlying judgment. So, notably, in several of those cases, there was no underlying determination, a discretionary determination of adjustment of status. I don't fully understand what you're saying. There's a motion to reopen by the BIA. If it's granted, the prior determination about adjustment of status will be overturned, right? In this case, I think that's right, Your Honor. That's why they're seeking the motion to reopen. So, it's true the adjustment of status was a discretionary judgment, but there's a regulatory process where they can go to get a motion to reopen. If they get it, it's good for them. That's right. We're reviewing that motion to reopen. If that motion to reopen is a product of legal error, the BIA should reconsider it and do it properly. What's the problem? What the issue is, if there's a legal error in the denial of the motion to reopen, the motion to reopen, if granted, would favor the petitioner and attain the adjustment of status. Then all we're doing is making sure that the motion to reopen is considered in a lawful manner. What's the problem? I think I'm trying to understand your question correctly. I think you're right that the court would have, if there's a legal error, the court would then have jurisdiction to review whether the board abused its discretion in denying the motion to reopen. Okay. That's the question here. The claim is that there was a legal error. You say there wasn't one, but we obviously have jurisdiction to decide whether there was a legal error. Right. Whether there's a legal error. We can never get the train going, so we've got to at least figure that part out. Okay. Right. I would also say that I just want to briefly go back to the petitioner's reliance on matter of fact. While in that case, the Ninth Circuit ultimately determined that there was not jurisdiction. While in that Ninth Circuit case, they determined that there was not jurisdiction to consider the motion to reopen. It did lay out a framework, which we think would likewise apply here, in that the court was deprived of jurisdiction because there was an underlying judgment. The court in the Ninth Circuit also relied on this court's reasoning in Prado, and in Prado, the court acknowledged that the court didn't have jurisdiction there because there was no underlying judgment. But there would be a case where there was an underlying discretionary judgment because there would be no jurisdiction. So basically, as your Honor, what we're saying is that Miranda's motion to reopen here is to present stronger, more compelling evidence to support his underlying claim for discretionary relief. And the court lacks jurisdiction to remove that. Thank you. Attorney Lesnau, you may mute your audio and video at this time. Attorney Olin, you have a one-minute rebuttal. If you would unmute and reintroduce yourself on the record to begin. Thank you, Your Honor. It's Randy Olin for Mr. Moreno. My sister used the word exegesis. I am well aware of the case law that says that the board is not required in giving its decision and its reasoning to provide an exegesis. There's a pretty wide gulf, however, between an exegesis and a one-sentence ipsy-dixit that is completely devoid of reasoning. My sister also mentioned that the board decision does mention the fact that she can't work. But it doesn't go into what that means. And more importantly than the economic aspect of not working, how are her children going to survive? The court says not a word about the fact that she can no longer care for her children, all of whom have very serious medical and mental health conditions of their own. Finally, Judge, with respect to that, I didn't get the volume on the Ninth Circuit case that my sister was mentioning. But I do want to say this with respect to the jurisdiction. The Ninth Circuit has held, and I'm sorry to quote, where the relief sought is formally the same as was previously denied. But the evidence submitted with a motion to reopen is directed at a different basis for providing the same relief. The circumstances can take the matter out of the realm of 1252A2B. In other words, the court would have jurisdiction. In elaborating on that principle, the Ninth Circuit unknowingly cited this case. Because it said an example would be the submission of evidence subsequent to a denial of, in that case, cancellation of removal. Concerning a newly discovered life-threatening medical condition afflicting a qualifying relative. It doesn't get much more on point than that. So how is there a different basis for providing the same relief? I don't understand that. Because it's all new evidence of her brain surgery, which has changed the entire calculus, Judge. No more work, no more caring for your children. What happens to this family? It's completely different. Thank you. Thank you. That concludes our argument in this case. Attorney Olin and Attorney Lesnau, you should disconnect from the hearing at this time.